STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
JULIAN KLEINWAKS, DEFENDANT-APPELLANT.

Argued May 27, 1975—Decided September 29, 1975.

Mr. *Alan Y. Medvin* argued the cause for defendant-appellant (*Mr. Sheldon Bross,* of counsel; *Messrs. Horowitz, Bross and Sinins,* attorneys).

Mr. *R. Benjamin Cohen,* Assistant Prosecutor, argued the cause for plaintiff-respondent (*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney).

Mr. *Richard W. Berg,* Deputy Attorney General, argued the cause *amicus curiae* for the State of New Jersey (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

SULLIVAN, J. This case presents the question whether a defendant in a criminal case is subjected to double jeopardy by the State appealing a judgment of acquittal entered by the trial court after a trial in which the jury has returned a verdict of guilty. We conclude that such an appeal does not subject a defendant to double jeopardy under either our Federal or State Constitutions.

Defendant Julian Kleinwaks was tried by jury and found guilty of conspiracy to operate a lottery, working as a clerk-copyist in a business of lottery and possession of lottery slips. Subsequent to the entry of judgment of conviction, defendant filed a timely motion for a judgment of acquittal[1] (*R.* 3:18-2). Following a hearing on the motion the trial court vacated the judgment of conviction, and ordered that a judgment of acquittal be entered on all three charges on the ground that there was insufficient evidence in the case to present a jury issue as to defendant's guilt.

The State appealed to the Appellate Division which held that the trial court had erred in its ruling, as there was sufficent evidence, direct and circumstantial, to convict. However, the Appellate Division agreed with defendant's appellate contention that the prosecutor had committed reversible error in certain comments made during summation.

Although the trial court had charged the jury to disregard the comments, the Appellate Division felt it was highly prejudicial to defendant, considering the circumstantial nature of the proofs. Therefore, while the judgment of acquittal n.o.v. entered by the trial court was reversed, the judgment of conviction was not reinstated. Instead, the matter was remanded for a new trial.[2]

---

[1]Defendant had moved for a judgment of acquittal at the close of the State's proofs and again after the presentation of all testimony had been concluded. The trial court denied both motions.

[2]The State does not challenge the Appellate Division's order for a new trial.

The Appellate Division found no merit in defendant's contention that *R.* 2:3–1(b)(3), which permits the State to appeal a judgment of acquittal entered in accordance with *R.* 3:18–2 (judgment n.o.v.) violates the double jeopardy clause of the Fifth Amendment of the United States Constitution.

We granted defendant's petition for certification, 67 *N. J.* 76 (1975), principally to consider his Fifth Amendment argument. Following the grant of certification, the United States Supreme Court decided *United States v. Wilson,* 420 *U. S.* 332, 95 *S. Ct.* 1013, 43 *L. Ed.* 2d 232 (1975); *United States v. Jenkins,* 420 *U. S.* 358, 95 *S. Ct.* 1006, 43 *L. Ed.* 2d 250 (1975) and *Serfass v. United States,* 420 *U. S.* 377, 95 *S. Ct.* 1055, 43 *L. Ed.* 2d 265 (1975) which have a direct bearing on the Fifth Amendment issue.

First we consider defendant's argument that, aside from his Fifth Amendment contention, the evidence presented at trial was insufficient to present a jury issue as to his guilt and the trial judge was correct in granting a judgment of acquittal n.o.v.

It is unnecessary to detail all of the evidence. We have reviewed it and conclude that the State's proofs, including the inferences that could reasonably be drawn therefrom not only were sufficient to present a jury question as to defendant's guilt, but also were adequate to sustain defendant's conviction of the charges presented.

As heretofore noted, defendant's basic contention is that the double jeopardy clause of the Fifth Amendment of the United States Constitution bars the State from appealing a judgment of acquittal entered n.o.v. by a trial judge after a jury verdict of guilty, and that *R.* 2:3–1(b)(3) which allows such an appeal by the State is unconstitutional for that reason.

The constitutionality of *R.* 2:3–1(b)(3) was considered in *State v. Kluber,* 130 *N. J. Super.* 336 *(App. Div.* 1974).

In that case the defendant was tried on charges of breaking and entering with intent to steal, and larceny. At the

trial, the jury was unable to agree on a verdict and was discharged by the trial judge. Subsequently, defendant moved under *R.* 3:18–2 for a judgment of acquittal after discharge of jury. The motion was granted by the trial judge. The State appealed pursuant to *R.* 2:3–1(b)(3) and defendant raised the contention that the State could not appeal in such a situation; that *R.* 2:3–1(b)(3) violates the prohibition against double jeopardy embodied in the Fifth Amendment of the United States Constitution and Article I, paragraph 11 of our State Constitution.[3]

The Appellate Division found no merit in defendant's contention. It held that *R.* 2:3–1(b)(3) was constitutional and that the State could appeal from a judgment of acquittal n.o.v. entered under *R.* 3:18–2 without violating the constitutional provision against double jeopardy. In reaching its decision the Appellate Division relied on the rationale of *State v. Sims,* 65 *N. J.* 359 (1974) in which this Court upheld the right of the State, upon leave granted, to appeal from an order of the trial court granting defendant a new trial after the trial jury had returned a verdict of guilty.

In *United States v. Wilson, supra,* the defendant was tried in the Federal District Court on a charge of converting union funds to his own use. However, following a jury verdict of guilty, the trial judge granted a motion to dismiss the indictment on the ground of prejudicial delay between the offense and the indictment. The Government sought to appeal the dismissal but the Third Circuit held that the double jeopardy clause of the Fifth Amendment barred review of the District Court's ruling. 492 *F.* 2d 1345.

The United States Supreme Court granted *certiorari* and, in an opinion written by Justice Marshall, held that when a trial judge dismisses an indictment after a verdict of guilty has been entered by the trier of fact, the Government may

---

[3]No contention was made in *Kluber* that the respective provisions against double jeopardy in the Federal and State Constitutions had other than the same meaning and application.

appeal from that ruling without running afoul of the double jeopardy clause of the Fifth Amendment. The opinion noted that the appeal, if successful, would not subject defendant to a second prosecution, but would merely reinstate the jury's verdict.

In a companion case, *United States v. Jenkins, supra,* 420 *U. S.* at 365, 95 *S. Ct.* at 1011, 43 *L. Ed.* 2d at 256–257, the same issue was summarized as follows:

When a case has been tried to a jury, the Double Jeopardy Clause does not prohibit an appeal by the Government providing that a re-trial would not be required in the event the Government is success-ful in its appeal. United States v. Wilson, 420 U. S. at 344–345, 352–353, 95 S. Ct. at 1022, 1026, [43 L. Ed. 2d 242, 246–247.] When this principle is applied to the situation where the jury returns a verdict of guilt but the trial court thereafter enters a judgment of acquittal, an appeal is permitted. In that situation a conclusion by an appel-late court that the judgment of acquittal was improper does not re-quire a criminal defendant to submit to a second trial; the error can be corrected on remand by the entry of a judgment on the verdict. To be sure, the defendant would prefer that the Government not be permitted to appeal or that the judgment of conviction not be entered, but this interest of the defendant is not one that the Double Jeopardy Clause was designed to protect.

*Wilson* and *Jenkins* stand for the proposition that the double jeopardy clause of the Fifth Amendment is directed at the threat of multiple prosecutions for the same offense and not at those government appeals which, if successful, would not require a new trial. In *Serfass, supra,* 420 *U. S.* at 392, 95 *S. Ct.* at 1064, 43 *L. Ed.* 2d at 276, Chief Justice Burger speaking for an almost unanimous court stated that the word "acquittal" has no talismanic quality for purposes of the double jeopardy clause and that prior pronouncements of the court that there can be no appeal after an acquittal, "cannot be divorced from the procedural context in which the action so characterized was taken."

These decisions are controlling on the several states insofar as interpretation and application of the federal con-stitutional provision against double jeopardy is concerned and are dispositive of defendant's Fifth Amendment argument.

However, a state is free as a matter of its own law to afford an individual greater protection than is provided by the Federal Constitution.

The New Jersey Constitution of 1947, Art. I, par. 11, contains the following provision against double jeopardy:

"No person shall, after acquittal, be tried for the same offense."

The Fifth Amendment of the United States Constitution, on the other hand, expresses the prohibition in more general terms:

"* * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb."

It has been suggested that our state constitutional prohibition against double jeopardy may impose greater restrictions on the State than is called for by the Fifth Amendment as interpreted by *Wilson, Jenkins* and *Serfass,* and that in the instant case the State should be barred from appealing a judgment of acquittal entered under *R.* 3:18–2 (judgment n.o.v.) on State double jeopardy grounds.[4]

Defendant did not raise this issue either in the trial court or on appeal. It was posed by this Court *sua sponte* and counsel were afforded the opportunity to submit supplemental memoranda on the question. The Court has the benefit of the arguments presented.

We conclude that the double jeopardy clause of our State Constitution, Art. I, par. 11, does not bar the State from appealing from a judgment of acquittal entered pursuant to *R.* 3:18–2 after the jury has returned a verdict

---

[4]There are numerous decisions of this Court holding that while the respective double jeopardy provisions of our State Constitution, Art. I, par. 11, and the Fifth Amendment to the Federal Constitution are dissimilar in language, they have the same meaning and are coextensive in application. For example, see *State v. Farmer,* 48 *N. J.* 145, 167–168 (1966), *cert.* den. 386 *U. S.* 991, 87 *S. Ct.* 1305, 18 *L. Ed.* 2d 335 (1967) ; *State v. Ebron,* 61 *N. J.* 207, 214 (1972).

of guilty. It follows that *R.* 2:3–1(b)(3) which permits the State to appeal in such a situation is not unconstitutional.

In this State, prior to 1969, a defendant in a criminal case had no right to move for a judgment of acquittal after the jury had returned a verdict of guilty. The only procedure available (except for an appeal) was a motion for a new trial.

In the 1969 Revision of Court Rules this Court adopted *R.* 3:18–2 (patterned on *Fed. R. Crim. P.* 29(c)), and permitted a defendant to make or renew a motion for judgment of acquittal after the jury had returned a verdict of guilty, or was discharged without having arrived at a verdict. However, in making this procedure available to a defendant, this Court, at the same time, adopted *R.* 2:3–1(b)(3) which gave the State the right to appeal if the motion for acquittal was granted.

Both rules must be regarded as part and parcel of an integrated procedure. Defendant was given a remedy he did not theretofore possess, but the grant of that right was made subject to the State's right to appeal if a judgment of acquittal was entered. Manifestly, this Court at that time concluded that no double jeopardy was involved, else it would not have adopted *R.* 2:3–1(b)(3) which gives to the State the right of appeal.

When a person goes to trial in a criminal case and stands convicted by jury verdict and thereafter a motion for a judgment of acquittal n.o.v. is made, the trial judge, at that stage of the case exercises a quasi-appellate function since he is being called upon to vacate the judgment of conviction and to overrule a determination made by the jury that the evidence established defendant's guilt beyond a reasonable doubt.[5]

---

[5]The standard to be applied by the trial judge in determining a motion for a judgment of acquittal n.o.v. is the same as that applicable

A judgment of acquittal n.o.v. entered by a trial judge in such a situation, is basically the same as where a defendant appeals from a judgment of conviction based on a jury verdict of guilty and the Appellate Court determines that the evidence was insufficient to present a jury issue as to defendant's guilt and that defendant's motion for acquittal made during trial should have been granted. In such a case the appellate court would order that the defendant stand acquitted. However, no one would question the right of the State to seek a further review of the Appellate Court's ruling and, if successful on appeal, have the jury verdict of guilty reinstated. In substance that is all that *R.* 2:3–1(b)(3) purports to do. There is no constitutional objection to it

*State v. Sims, supra,* presented a somewhat similar situation involving a claim of double jeopardy. In *Sims,* after the jury had found defendant guilty of working for a lottery, the trial judge granted defendant's motion for a new trial on the ground that the evidence was insufficient to support the conviction. The State, on leave granted, appealed.

Defendant raised the issue that the State's appeal subjected him to double jeopardy. We rejected this contention saying, 65 *N. J.* at 370–371:

Certainly, it seems clear that far from putting a criminal defend-ant in jeopardy a second time, a reversal of an order for a new trial, instigated by a state appeal, places him in the precise position he was in after the verdict in his first trial. In no sense is a second prosecution begun.

We recognize that the ruling of the Appellate Division, which we affirm, calls for a new trial for defendant. How-

to a motion for acquittal made during trial. However, a successful appeal by the State in the two instances would have substantially different results. In the case of the reversal of the acquittal entered during trial, it would require the defendant to stand trial again — a clear case of double jeopardy. In the case of the reversal of the acquittal entered n.o.v., defendant would not be subjected to a second prosecution; the jury verdict of guilty would merely be reinstated.

ever, this is not because of the State's successful appeal from the judgment of acquittal n.o.v., but rather the result of defendant's contention, sustained by the Appellate Division, that certain comments made by the prosecutor during summation had prejudiced defendant's right to a fair trial.

Affirmed.

CONFORD, P. J. A. D., Temporarily Assigned (dissenting). We are called upon here to decide for the first time the constitutionality under the New Jersey Double Jeopardy Clause, Const. (1947), Art. I, Par. 11, of R. 2:3–1(b)(3), which allows the State to appeal from the grant by a trial judge of a judgment of acquittal notwithstanding the verdict pursuant to R. 3:18–2.[1] In the earlier phases of the appeal defendant argued only violation of the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution, but, by invitation of the Court, the argument and inquiry have been extended to the reach and scope of our own State constitutional proviso. As I find the federal constitutional question foreclosed against defendant by the rationale of the trilogy of United States Supreme Court opinions, earlier this year, in *United States v. Wilson,* 420 *U. S.* 332, 95 *S. Ct.* 1013, 43 *L. Ed.* 2d 232 (1975); *United States v. Jenkins,* 420 *U. S.* 358, 95 *S. Ct.* 1006, 43 *L. Ed.* 2d 250 (1975); and *Serfass v. United States,* 420 *U. S.* 377, 95 *S. Ct.* 1055, 43 *L. Ed.* 2d 265 (1975), I confine this dissent to the issue of the alleged State constitutional violation.

The opinion of the majority, as I read it, rejects the defendant's State constitutional double jeopardy position on

---

[1]Both of the practice rules cited were promulgated by the Supreme Court in 1969. *R.* 3:18–2 is patterned after Rule 29(c) of the Federal Rules of Criminal Procedure. The promulgation by this Court of a rule of procedure is not, of course, an adjudication in any sense of its constitutionality, see *Busik v. Levine,* 63 *N. J.* 351, *passim,* appeal dismissed, 414 *U. S.* 1106, 94 *S. Ct.* 831, 38 *L. Ed.* 2d 733 (1973).

three grounds. The first, expressed in footnote 5 of the opinion, is identical with the rationale of the *Wilson-Jenkins-Serfass* trilogy cited above; that is to say, double jeopardy is not implicated because a reversal of the acquittal n.o.v. will not require the defendant to stand trial again. Since, in my view, the formulation enunciated in *Wilson-Jenkins-Serfass* is an unsound, irrational and artificial restriction of the protection of the individual implicit in the spirit and fundamental intent of the Double Jeopardy Clause, I would not follow it in enforcing *N. J. Const.* (1947), Art. I, Par. 11 as respects the defendant before us here.[2]

The rationale of *Wilson-Jenkins-Serfass* was summarized in *Jenkins, supra* (420 *U. S.* at 365, 95 *S. Ct.* at 1011, 43 *L. Ed.* 2d at 256) as follows:

"When a case has been tried to a jury, the Double Jeopardy Clause does not prohibit an appeal by the Government providing that a retrial would not be required in the event the Government is successful in its appeal * * * When this principle is applied to the situation where the jury returns a verdict of guilt but the trial court thereafter enters a judgment of acquittal, an appeal is permitted. In that situation a conclusion by an appellate court that the judgment of acquittal was improper does not require a criminal defendant to submit to a second trial; the error can be corrected on remand by the entry of a judgment on the verdict."

---

[2]The Fifth Amendment to the United States Constitution provides: no person "shall * * * be subject for the same offense to be twice put in jeopardy of life or limb." The somewhat different language of the New Jersey provision is discussed *infra*.

The construction of the Fifth Amendment by the United States Supreme Court is binding on the several states (*via* the Fourteenth Amendment, see *Benton v. Maryland*, 395 *U. S.* 784, 89 *S. Ct.* 2056, 23 *L. Ed.* 2d 707 (1969)), only to the extent that it is restrictive of state prosecutions against defendants not allowed under such construction or to the extent that the state is undertaking to apply the federal Constitution. *Oregon v. Hass*, 420 *U. S.* 714, 95 *S. Ct.* 1215, 43 *L. Ed.* 2d 570 (1975). However, a state may interpret a parallel provision of the state constitution or state common law more favorably to a defendant than the federal Constitution. *Id.*, at 719, 95 *S. Ct.* at 1219, 1220, 43 *L. Ed.* 2d at 575, 576.

It is settled under all constructions of both the state and federal Double Jeopardy Clauses, see *e. g. State v. Hart,* 90 *N. J. L.* 261 (E. & A. 1917), aff'g. 88 *N. J. L.* 48 (Sup. Ct. 1915) ; *Kepner v. United States,* 195 *U. S.* 100, 24 *S. Ct.* 797, 49 *L. Ed.* 114 (1904), that the acquittal of a defendant by either judge or jury at a jury trial *constitutionally* precludes his retrial for the same offense. This being so, an appeal by the state from such an acquittal is constitutionally disallowed *only* because it incepts, after the termination by the acquittal of one period of jeopardy, a new hazard or "jeopardy" of the defendant becoming convicted for the same offense. See *Ball v. United States,* 163 *U. S.* 662, 671, 16 *S. Ct.* 1192, 41 *L. Ed.* 300 (1896).

In the light of these elemental principles I can conceive no rational basis for affording an acquitted defendant less protection from renewed jeopardy of conviction merely because the trial judge, on the motion for a directed acquittal, instead of acquitting outright, chooses to exercise the authority granted him under *R.* 3 :18–2. That authority is to deny or withhold action on the motion in order to afford the jury a prior opportunity to acquit the defendant, and then, the jury convicting rather than acquitting, to implement the judge's deliberate judgment that there was insufficient evidence for a jury to convict, and therefore grant the acquittal which he could, on exactly the same evidence and pursuant to exactly the same criteria, have granted in the first place. In my judgment, no rational distinction for the difference in constitutional effect has been submitted by the State or suggested by the Court.

The defendant stands acquitted as fully and completely (one would have thought) on acquittal by the judge n.o.v. as if acquitted by him before giving the case to the jury. Surely, the fact, *of itself,* that a jury has, on evidence thought inadequate by the judge, been allowed a try at a verdict and come out wrong in the judge's estimate, should make no difference in how the fundamental constitutional

value we are examining should balance out as to the defendant in the particular case. *Wilson–Jenkins–Serfass* expounds that there is only one legitimate value embodied in the Double Jeopardy Clause, and that is for a person not to be tried more than once for the same offense (disregarding, of course, retrials after reversals of convictions). If he has been tried only once, and, as here, the trial has resulted in verdicts *both* of guilt and innocence, then, so the argument goes, even though at the trial level the subsequent acquittal by the judge nullifies the conviction as a matter of law, no invidious double jeopardy is activated by allowance of the government appeal since that allowance cannot result in the defendant's *retrial* (a reversal will merely reinstate the voided jury verdict), and avoidance of such a retrial is the only objective of the Constitution.

Before dissecting the anatomy of that rationale, it is of interest that it has been broadly recognized by the profession that avoidance of a retrial for an offense has distinctly not been regarded as the only value subserved by the Double Jeopardy Clause. In addition to the harassment of the defendant and the expense to the public of unnecessary retrials of the same offense is the salient consideration that a defendant, "once acquitted or convicted of crime for his conduct in a particular transaction * * * should be able to consider the matter closed and to plan his life ahead without the threat of subsequent prosecution and possible imprisonment for the same conduct". Note, "Statutory Implementation of the Double Jeopardy Clauses: New Life for a Moribund Constitutional Guarantee", 65 *Yale L. J.* 339, 340–341 (1956); see also Comment, "Twice in Jeopardy," 75 *Yale L. J.* 262, 266–267 (1965).

Further, preliminarily, this new concept, made the conclusive litmus-test of Double Jeopardy by *Wilson–Jenkins-Serfass,* in effect negated the upholding by the same Court, as recently as 1970, of the view of the matter in the present context which I espouse, in *United States v. Sisson,* 399

*U. S.* 267, 90 *S. Ct.* 2117, 26 *L. Ed.* 2d 608 (1970), which had been relied upon by the Third Federal Circuit, 492 *F.* 2d 1345, 1346–1347 (1973), for the position rejected by the Supreme Court in *Wilson, supra.*

*Sisson* arose under the former federal Criminal Appeals Act.[3] Defendant had been tried for refusing to submit to induction into the armed forces. A jury found him guilty.

On a post-verdict motion, the District Court entered what it termed an "arrest of judgment", dismissing the indictment on the ground that Sisson could not be convicted because his sincere opposition to the Vietnam war outweighed the country's need to draft him. The government sought to appeal the ruling on the theory that it was within the applicable "arresting judgment" provision of the Criminal Appeals Act. The Supreme Court held that the decision was not appealable and dismissed the case for want of appellate jurisdiction.

Justice Harlan delivered the plurality opinion of the Court for four Justices. Justice Black joined as a fifth judge in Part II–C of that opinion (including the here material assertions as to constitutionality) and in the judgment dismissing the appeal. Justice Harlan explained that the order of the District Court was not an arrest of judgment within the meaning of the Criminal Appeals Act but rather an "acquittal rendered by the trial court after the jury's verdict of guilty," since the order was "bottomed on factual conclusions not found in the indictment but instead made on the basis of evidence adduced at the trial", 399 *U. S.* at 288, 90 *S. Ct.* at 2129. The District Court's post-verdict ruling was deemed indistinguishable from a hypothetical verdict of acquittal

---

[3] The former Criminal Appeals Act (18 *U. S. C. A.* § 3731) was amended by Congress in 1971. Congress by the amendment sought to broaden the government's right to appeal by authorizing any appeal by the government which did not transgress the constitution. See *Wilson, supra,* 420 *U. S.* at 338–9, 95 *S. Ct.* at 1019, 43 *L. Ed.* 2d at 238–239. *Wilson* was decided under the amended statute.

entered by a jury on an instruction incorporating the constitutional defense recognized in the ruling of the trial court. If the jury had been so instructed and had acquitted the defendant, it was pointed out, no appeal would lie under the Criminal Appeals Act. The legislative history of the act made it clear that Congress did not contemplate review of verdicts of acquittal, no matter how erroneous the constitutional theory underlying the instructions. 399 *U. S.* at 289–290, 90 *S. Ct.* 2117.

Of most significance for present purposes, however, in the part of the opinion joined by Justice Black, Justice Harlan asserted that an appeal could not be taken in the case without a violation of the Double Jeopardy Clause. He said:

"Quite apart from the statute, it is, of course, well settled that an acquittal can 'not be reviewed, on error or otherwise, without putting [the defendant] twice in jeopardy, and thereby violating the constitution * * * [I]n this country a verdict of acquittal, although not followed by any judgment, is a bar to a subsequent prosecution for the same offence,' *United States v. Ball*, 163 *U. S.* 662, 671, 16 *S. Ct.* 1192, 1195, 41 *L. Ed.* 300 [303] (1896) [footnote omitted]."[4] 399 *U. S.* at 289–290, 90 *S. Ct.* at 2129.

Defendant in *Wilson* argued that application of the *Sisson* syllogism[5] would forestall a government appeal, although permitted by statute, which offended Double Jeopardy. The Court disagreed with that interpretation of *Sisson*. It felt that the *Sisson* Court's specific reference to the Double Jeopardy Clause was to the hypothetical jury verdict previ-

---

[4]In the omitted footnote, Justice Harlan remarked, "This principle would dictate that after this jurisdictional dismissal, *Sisson* may not be retried." 399 *U. S.* at 290, n. 18, 90 *S. Ct.* at 2129.

[5]The *Sisson* syllogism holds:
(1) the post-verdict ruling was not a common-law arrest of judgment, but an acquittal;
(2) under the *Ball* case, an acquittal cannot be appealed without contravening the Double Jeopardy Clause; and
(3) the District Court's ruling in *Sisson* was shielded from review as a matter of constitutional law.

ously mentioned in the opinion rather than to the appealability of the order entered in *Sisson* itself. 420 *U. S.* at 350, 95 *S. Ct.* at 1025–1026, 43 *L. Ed.* 2d at 245–246. While the Court's observation is probably technically correct, it is entirely clear to me that the *Sisson* Court's intent nevertheless was to imply that the constitutional immunity from appeal was fully applicable to a *Sisson*-type acquittal. In view of the subject Justice Harlan was pursuing at the point of the mooted observation there was no occasion for him to be distinguishing, in Double Jeopardy terms, between an ordinary jury verdict of acquittal and an acquittal by a judge, whether with or without a prior jury verdict in the case.

The almost universal view of the lower federal courts which gave consideration to the question prior to *Wilson-Jenkins-Serfass* was that *Sisson* was decided on Double Jeopardy as well as statutory grounds.[6] However, the resolution of the debate as to the mooted intent of *Sisson* in the respect discussed is not critical to my position in this case. After all, *Wilson-Jenkins-Serfass* is now the authoritative version of federal Double Jeopardy protection. The determinative question for this Court is whether it rationally commends itself as good doctrine as to the outer limits of Double Jeopardy protection for the citizen under our own Constitution. I submit it does not, once it is accepted — as indeed it must be — that a judicial acquittal absent prior submission of the case to the jury is constitutionally beyond appeal by the State.

The issue for me — not even addressed by the Supreme Court in the new trilogy — is as to how and in what way the character of the action of the judge in granting an acquittal

---

[6]See *United States v. Jaramillo*, 510 *F.* 2d 808, 811–812 (8 Cir. 1975) ; *United States v. Robbins*, 510 *F.* 2d 301, 302 (6 Cir. 1975) ; *United States v. Suarez*, 505 *F.* 2d 166, 168 (2 Cir. 1974) ; *United States v. Jenkins*, 490 *F.* 2d 868, 879–880 (2 Cir. 1973) aff'd other grounds, *United States v. Jenkins, supra; United States v. Ponto*, 454 *F.* 2d 657, 663–664 (7 Cir. 1971) (*en banc*) ; *United States v. Hill*, 473 *F.* 2d 759, 761–763 (9 Cir. 1972). But see *United States v. Findley*, 439 *F.* 2d 970, 971–973 (1 Cir. 1971).

after the interposition of a jury verdict of guilt, rather than before, changes the constitutional justice universally conceded in the latter situation of perpetual absolution of the defendant thereafter of criminal liability for the identical offense or being placed in jeopardy thereof. To say, as does the Supreme Court, no more than that in the former situation the reinstatement of his conviction after a successful government appeal relieves the defendant of the prospect of a "retrial" is to ignore the heart of the Double Jeopardy protection. Subjection to a new trial would be no more than a nuisance if it were not inherently attended by the jeopardy of conviction at its conclusion. The constitutional protection was not conceived in order to relieve citizens from the threat of unreal jeopardy-free trials after previous acquittals for the same offense, but rather from *jeopardy* of stigmatization and punishment for the same offense after acquittal or after being placed in jeopardy of conviction once before. See *Price v. Georgia,* 398 *U. S.* 323, 90 *S. Ct.* 1757, 26 *L. Ed.* 2d 300 (1970) ; *cf. State v. Williams,* 30 *N. J.* 105, 120–121 (1959).

An acquittal terminates "jeopardy". See *Green v. United States,* 355 *U. S.* 184, 188, 78 *S. Ct.* 221, 2 *L. Ed.* 2d 199 (1957). Consequently, a citizen granted an acquittal n.o.v. has necessarily terminated a period of jeopardy in the constitutional sense. The moment the State pursues by legal sanction an appeal therefrom which *can* eventuate in his adjudication of guilt for *that same offense,* the defendant, regardless of the fact that another trial will not occur, has been placed in jeopardy a second time with the same certainty and at the same relative time as would be a defendant acquitted on a directed verdict by the judge if the State were allowed to appeal therefrom. The incidence of a second trial in the second situation as distinguished from the first is irrelevant to the question of multiple *jeopardy* as that attaches the moment the appeal is filed in either instance.

As noted above, discussion in earlier cases about the object of relieving acquitted defendants of the onus of new trials or prosecutions would be meaningless if such retrials were

not attended by the jeopardy of new convictions. Consequently, to make the Double Jeopardy Clause stand or fall for the defendant on the single criterion of the non-incidence of a retrial is to mistake a symptom for the constitutional disease. The error is painfully apparent.

For reasons explained in *City of Newark v. Pulverman,* 12 *N. J.* 105, 110 (1953), the framers of the 1844 Constitution eschewed the "double jeopardy" language of the Fifth Amendment in favor of the formulation: "No person shall, after acquittal, be tried for the same offense." Art. I, par. 10. The language was carried verbatim into the Constitution of 1947. Art. I, Par. 11. The purpose was to avoid the possibility that a defendant would be held immune from further prosecution where his first trial ended in a jury disagreement or disposition other than a verdict of acquittal. See Proceedings, New Jersey Constitutional Convention of 1844 (1942), 153, 412. However, New Jersey courts have heretofore held the the purposes and objects of both provisions are the same. *State v. Williams, supra,* 30 *N. J.* at 122; *State v. Wolf,* 46 *N. J.* 301, 303 (1966); *State v. Farmer,* 48 *N. J.* 145, 168 (1966) *cert.* den. 386 *U. S.* 991, 87 *S. Ct.* 1305, 18 *L. Ed.* 2d 335 (1967).

While it is desirable, other things being equal, that state and federal constitutional provisions having the same basic purpose of protecting a citizen from repetitive criminal jeopardy should be construed the same way by the state and federal courts, there is no good reason for a state court to defer to a federal constitutional interpretation of such a provision favorable to the prosecution and against the citizen if it regards the latter as regressive and a departure from principles and values inherent in the provision. In any event, I discern nothing in the prior decisions of the highest court of this State militating against the position I take here. *State v. Sims,* 65 *N. J.* 359 (1974), cited by the majority, does not touch the question, the issue there having been the State's right to appeal a trial court's grant of a motion for a new trial, not a trial court's grant of an acquittal.

The second ground espoused by the majority is, in effect, that since defendants prior to 1969 did not enjoy the right to move for judgment notwithstanding the verdict at all, the grant of that right by rule of court could constitutionally be hedged with a condition allowing the state an appeal from the grant of the motion. I regard this position as unsound in that the new rule did not alter the essential quality of the act of the judge in granting such a motion as constituting an acquittal at the trial level. The fact that, under the rule, the judge can delay his direction of an acquittal from before to after a jury verdict does not detract one iota from the nature and quality of his act, as it is unquestioned that the standards and criteria for granting an acquittal after verdict are identical with those applicable before verdict. *Pressler*, 1975 New Jersey Court Rules, p. 387, Comment following *R.* 3:18-2. The exercise by the Supreme Court of its procedural rule-making power in adopting *R.* 3:18-2 and *R.* 2:3-1(b) (3) in 1969 cannot of course affect fundamental constitutional rights.

The third ground of decision by the majority is that in a motion for acquittal notwithstanding the verdict the trial judge is exercising "a quasi-appellate function" in that he is reviewing a conviction by a jury; and that since appellate decisions in criminal cases are further appealable by the State without violating double jeopardy restrictions, there logically is no constitutional impediment to a State appeal here. One of the fallacies in the stated syllogism is the initial premise. An acquittal n.o.v. is a trial-level decision. The motion therefor does not invoke appellate review of the jury verdict in any sense but, as noted above, calls for an appraisal of the proofs for sufficiency exactly as though the motion had been submitted to the judge before the case was given to the jury. Second, the fact that an appellate determination on an *appeal by a defendant* is constitutionally further reviewable at the instance of the State begs the question as to the category of situations in which the State can constitutionally

seek review of *trial-level* determinations — the issue presented here.

Finally, mention should be made of *State v. Kluber,* 130 *N. J. Super.* 336 (App. Div. 1974), discussed in the majority opinion. The court there upheld the constitutionality of *R.* 2:3–1(b)(3) in relation to an appeal by the State of a judgment of acquittal n.o.v. after a jury disagreement. It is noteworthy that the holding there would offend the rationale of *Wilson-Jenkins-Serfass* in that a reversal on appeal would subject the defendant to a retrial. In any event, I regard the expression of view in that case that the nature of the determination of a motion for acquittal n.o.v. under *R.* 3:18–2 "involves no issues of fact raised during the trial" (130 *N. J. Super.* at 344) as clearly in error. On such a motion the trial court must examine the factual evidence to determine whether it was sufficient to submit to the jury. As already noted, this is precisely the same exercise it performs when addressing a motion for acquittal at the end of the case. As indicated above, there is no sound reason why a defendant-beneficiary of the former type of motion should have less constitutional relief from appeal by the State than in the latter.

I would reverse the judgment of the Appellate Division and direct a dismissal of the State's appeal from the judgment of the trial court.

Justice PASHMAN joins in this opinion.

*For affirmance* — Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, CLIFFORD and SCHREIBER—5.

*For reversal* — Justice PASHMAN and Judge CONFORD—2.